LAMBERT HOISTING ENGINE CO. v. LIDGERWOOD MFG. CO.

(Circuit Court of Appeals, Third Circuit. May 7, 1907.)

No. 25.

**1. PATENTS—INFRINGEMENT—EQUIVALENT PARTS.**
Where three separate elements in a patented device, each performing an individual function, are supplanted in another device by a single element which itself performs the functions of all three, the threefold capacity of the single element is not the equivalent of the three separate elements.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 24.]

**2. SAME—CONVEYING APPARATUS.**
The North patent, No. 480,029, for a conveying apparatus, relating to fall rope carriers for cable conveyors, is not infringed by the device of the Delaney & Lambert patent, No. 829,911. *Held* infringed, however, by another device manufactured by defendant.

**3. SAME—INVENTION—CABLE HOIST.**
The Dusedau patent, No. 548,973, for a cable hoist, is void for lack of invention.

Appeal from the Circuit Court of the United States for the District of New Jersey.

For opinion below, see 150 Fed. 364.

Edward M. Colie and Wm. H. Kenyon, for appellant.
Gifford & Bull and Livingston Gifford, for appellee.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below the Lidgerwood Manufacturing Company, assignee of a patent to Charles M. North, No. 480,029, for a conveying apparatus, and also of one to Wilhelm Dusedau, No. 548,973, for a cable hoist, filed a bill in equity against the Lambert Hoisting Engine Company, charging infringement of said patents. The court below entered a decree that the North patent was valid and infringed and the Dusedau was not infringed. Cross-appeals were taken. The patents pertain to conveyors which in a general way consist of a cable stretched between two towers. Traveling upon this cable on grooved wheels, and moved by an endless haul rope is a load carriage. Traveling also on the cable on grooved wheels and moved to and from the towers by an endless haul rope are rope carriers. A fall rope, extending from the engine at the head tower to the load carriage, raises or drops the load. So long as the conveyor is loaded the haul rope is taut, but, when it is empty and the haul rope is played out from the engine to drop it, the conveyor is not heavy enough to take up the slack of the line, the latter sags, and the conveyor remains stationary. This difficulty was overcome in Miller's patent, No. 434,550, by a successful device which the plaintiff company has standardized and still uses. It consists of a number of rope carriers suspended by grooved wheels on the cable of an inclined conveyor, between the head tower and the load conveyor. The haul rope passes through openings in each rope carrier and has a series of buttons on it of different sizes and at desired spaces apart, and the openings of successive rope carriers are of different sizes. These buttons and openings are relatively of such sizes that, when the load conveyor is lowered from the head tower by paying out the haul rope, the first button on such haul rope passes through the openings of all the rope carriers, except the last. This last it catches and carries from the head tower at the same speed the load conveyor is moving, and as thus carried out it of course supports the fall rope which the load conveyor draws after it. In like manner each button in time catches its mate rope carrier, and carries it forward in definite sequence and all at designed spaces apart. The result is that, when the load conveyor reaches the operative point, a sufficient number of regularly spaced rope carriers, automatically carried forward, support the fall rope, and prevent it from sagging when it is played out to allow the bucket or other load receptacle to drop. As the load conveyor returns to the head tower, the rope carriers are automatically carried back to their places in definite sequence by the same button mechanism. These advantages were disclosed by Miller in his patent, where he says:

"As soon as the main carriage has reached the bottom of the incline, or to a stop secured to the main cable, the tackle-block will descend as the fall rope is run off of the drum and the descent of the tackle-block under these circumstances will not be interfered with materially by the weight of that portion of the fall rope intervening between the tower and the main carriage, because such weight will be borne by the fall rope-carriers."

It is manifest, therefore, that the practicable self-propulsion and self-distribution of rope carriers was known prior to North's patent. Instead of spacing rope carriers through mechanism placed on the moving ropes as Miller had done, North controlled them by placing all his

spacing mechanism on the conveyor itself. Without going in detail into the mechanism, it suffices to say he did this by placing on the rope carrier two connected grooved wheels of different diameter—one in engagement with the fixed cable, the other with the moving rope. Thereby a rope carrier, by virtue of the relative diameter of its two wheels, was made to travel outward from the head tower at quarter, half, or three-quarter the speed of the load conveyor. In returning, the rope carriers were simply pushed back to the head tower, as they were reached, by the load conveyor. This combination of two connected wheels of varying diameters in engagement, respectively, with the trackway cable and the hauling rope was embodied in the first claims, viz.:

> "A rope carrier containing a wheel adapted to be turned by said hauling rope, a wheel adapted to bear against the cable or trackway, and connections between said two wheels, whereby the rotation of the first is communicated to the second."

The alleged infringing half-speed device of respondent shown in the accompanying cut is manufactured under letters patent No. 829,-911, issued August 28, 1906, to Delaney and Lambert.

In it two grooved upper wheels, 21, support the rope carrier on the trackway cable, press the latter against the grooved main wheel, 23, and force it to grip the cable. The two grooved lower wheels, 22, press the haul rope against the grooved main wheel, 23, and force it to grip that rope. The wheel, 23, operates in a slight bend of the haul rope,

and, as the latter is moved, right or left, the rope carrier travels on the carrying wheels, 21, by the grip on the cable trackway of wheel, 23, at a rate one-half the speed of the haul rope, and therefore of the load conveyor. In this construction the main weight of the rope conveyor is suspended from, instead of supported on, the cable trackway, as is the case in North's devices. The strains are all on direct lines. It thus appears that Delaney's and Lambert's device spaces the rope conveyors by different means than did North. Each element in North's combination—a trackway cable, a load carriage, and a rope carrier—was old. The novel feature consisted in combining in his rope carrier "a wheel adapted to be turned by said traveling rope, a wheel adapted to bear against the cable or trackway, and connections between two said wheels, whereby the rotation of the first is communicated to the second." That is, his combination has one wheel bearing against the cable, another against the haul rope, and a rotation communicating connection between the two wheels. Now, in the respondent's conveyor, these three distinct elements have been eliminated, and the function of the three united in a single element. That element is the single central wheel, which, being "adapted to be turned by said traveling rope," performs the function of one of North's wheels, being "adapted to bear against the cable or trackway" performs the function of the second wheel, and, uniting in itself the function of both wheels, it embodies in itself the function of North's "connections between two said wheels, whereby the rotation of the first is communicated to the second." What essentially different mechanical structures the two are is shown by the fact that the connecting gearing between the two wheels in North's device is not simply a coupling or communicating device, but in it is embodied the speed and space regulating element which is the controlling feature of North's device. Thus in his specification Miller says:

"The speed at which each carrier advances will be regulated by the diameter of the wheels or gears interposed between the sheave receiving motion from the fall rope on the endless rope and the sheave bearing against the cable, so that in the series of rope carriers on each side of the carriage each one of the series will travel faster than those farther away from the carriage. By this means each series of rope carriers will space itself along the cable at proper distances apart for all positions of the carriage."

Now, this gear-connecting mechanism between the two wheels which we find embodied in the sixth claim under the element "and mechanism actuated by said rope, whereby the movement of said traction device, and thereby that of the carrier, is controlled," has been eliminated by the respondent, who by placing a single wheel in another and novel relation, to wit, in a dual relation—i. e., to both the trackway cable and the haul rope—has made that wheel perform a triple function, and become itself the actuating and the speed-controlling agent of the rope conveyor. The respondent's single wheel device differing in form and function from the two-wheeled, gearing-connected device of North, we are clear it does not fall within the monopoly of North's patent. Where three separate elements, each performing an individual function, are supplanted by a single element which itself performs the functions of all three, it is quite clear that the three-

fold capacity of the single element is not the equivalent of the three single elements.

We think, however, that the respondent has infringed North's claims in their quarter and three-quarter speed rope conveyors. In the quarter speed device we find a grooved wheel of small diameter "adapted to bear against the cable or trackway." Beside it is a larger wheel, and the two are cast integrally with a hollow axle sleeve which forms a connection "between said two wheels whereby the rotation of the first is communicated to the second." Having thus the three elements of North's claim, performing the same work in the same way, it is clear the combination infringes; and the three-quarter speed device contains the same element in reverse relation. By placing the smaller wheel within the larger wheel and permitting the draw rope to enter through a slot in the groove of the larger wheel, an ingenious change has been made, but analysis shows it conflicts with North's claim, because its two wheels cast integrally with a hollow axle sleeve embodies North's three separate elements, viz., "a wheel adapted to be turned by said traveling rope," a wheel "adapted to bear against the cable or trackway," and connections between said two wheels, "whereby the rotation of the first is communicated to the second."

It remains to consider the patent of Dusedau. The gist of that invention consists in making the traction machinery of a rope carrier engage with the haul rope below, instead of above, the cable. The advantage of such a structure is obvious, for in it the weight of the machinery suspended below the cable tends to steady the structure and keep it plumb. But, while this is the case, its location at that point did not involve invention. The patent of North showed an endless rope, one branch of which was above, the other below, the cable. Now, while the particular method which Dusedau made to engage the traction rope below the cable might involve invention and warrant a claim for such construction, it is equally clear he was not entitled to claims covering any rope carrier mechanism placed below the cable without limiting such mechanism to his particular device. Such being the nature of his claims, the court was justified in holding his patent invalid.

In view of this conclusion, the motion to dismiss the appeal need not be decided. Upon both appeals the decree of the Circuit Court, except as now directed to be modified, is affirmed, and the cause is remanded to that court with instructions to enter a decree dismissing the bill as to the Dusedau patent, decreeing the respondent's quarter and three-quarter rope carriers infringe the first claim of the North patent, and that respondent's half-speed rope carrier does not infringe the North patent. Costs on the respondent's appeal on the North patent are to be paid by respondent, and on respondent's appeal on the Dusedau patent to be paid by complainant.