YANCEY v. ENRIGHT et al.

(Circuit Court of Appeals, Fifth Circuit. February 24, 1916. Rehearing Denied April 19, 1916.) No. 2779.

1. PATENTS ⬤⟹328—VALIDITY AND INFRINGEMENT—SEINING APPARATUS.

The Yancey patent, No. 919,109, for a seining apparatus for closing and hauling in a seine in shrimp fishing, while for a combination of old elements, covers the first practical and successful machine, and, in view of its superior utility over anything in the prior art in providing an unrestricted free way for the lead lines and thus avoiding the clogging of the machines, is entitled to the benefit of mechanical equivalents to perform such function. As so construed, *held* infringed.

2. PATENTS ⬤⟹245—INFRINGEMENT—PATENTS ENTITLED TO BENEFIT OF DOCTRINE OF EQUIVALENTS.

The doctrine of mechanical equivalents is not confined to pioneer patents, but may be applied to secondary patents as well if they exhibit a degree of invention and show a distinct and valuable advance in the art which entitles them to its application.

[For other cases, see Patents, Cent. Dig. § 386; Dec. Dig. ⬤⟹245.]

3. PATENTS ⬤⟹243—INFRINGEMENT—UNITING TWO ELEMENTS INTO ONE.

Uniting two elements of a patented combination into one piece, without change of function or method of performance, does not avoid infringement.

[For other cases, see Patents, Cent. Dig. §§ 382-384; Dec. Dig. ⬤⟹243.]

4. PATENTS ⬤⟹245—"MECHANICAL EQUIVALENT."

Where two devices do the same work in substantially the same way and accomplish substantially the same result, they are "mechanical equivalents," even though they differ in name, form, or shape.

[For other cases, see Patents, Cent. Dig. § 386; Dec. Dig. ⬤⟹245.
For other definitions, see Words and Phrases, First and Second Series, Mechanical Equivalent.]

5. PATENTS ⬤⟹237—INFRINGEMENT—MECHANICAL EQUIVALENTS.

A fixed sliding guide is the equivalent of a rolling guide.

[For other cases, see Patents, Cent. Dig. §§ 374, 375; Dec. Dig. ⬤⟹237.]

6. PATENTS ⬤⟹240—INFRINGEMENT—ADDING IMPROVEMENT TO PATENTED DEVICE.

The addition of an improving feature does not excuse the appropriation of another's invention covered by a patent.

[For other cases, see Patents, Cent. Dig. § 379; Dec. Dig. ⬤⟹240.]

Pardee, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit in equity by Arthur Yancey against John W. Enright and others. Decree for defendants, and complainant appeals. Reversed.

This was a bill in equity, filed on behalf of the plaintiff, who is appellant here, seeking to restrain the defendants, who are appellees here, from using an alleged infringing device of a patented machine to close and haul from the bed of the water seines used for catching shrimp. Upon the hearing in this

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

court, appellant abandoned all claims of all his patents, except claims numbered 1, 2, and 4 of a patent issued to him on April 20, 1909, and numbered 919,109. The appellees deny the validity of appellant's patent, for alleged want of novelty, and also deny infringement in the use of the device, attributed to them. The court below dismissed the bill, determining that appellant's patent was valid, but that appellees' device did not infringe it, since it was not entitled to the benefit of the doctrine of equivalents.

John Dymond, Jr., and A. Giffen Levy, both of New Orleans, La. (E. Lloyd Posey, of New Orleans, La., of counsel), for appellant.

John C. Hollingsworth, of New Orleans, La. (Philip H. Mentz, of New Orleans, La., of counsel), for appellees.

Before PARDEE and WALKER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge (after stating the facts as above). [1] The fourth claim of appellant's patent, numbered 919,109, expresses the idea of his invention in these words:

"In seining apparatus, the combination of means for converging and directing upwardly the lead lines of a seine, comprising a plurality of sets of suitably mounted closing and guiding rollers, said sets of rollers being spaced apart to allow of the passage of foreign matter apt to tangle in the web, adjacent to the lead lines."

The novelty, if it exists, lies in a method of arranging and spacing the rollers, which help close and haul in the seine, which avoids the clogging of the machinery by foreign matter encountered by it, while the lead lines are passing the rollers, during the process of closing and hauling in the seine. Before the use of machines for closing and hauling seines in catching shrimp, the method had been for the fishermen to let the lead line pass under their feet, while they stood on the bed of the water. Aside from objections of discomfort to the fishermen, this method limited the catching of shrimp to waters so shallow as not to exceed the stature of a man. The purpose of closing machines was to overcome such objections and limitations. The appellant's patent 919,109 was not a pioneer in the art of seine fishing. A patent in 1895 in the art had been issued to Hommerberg, two to Lindsay in 1897, and three to the appellant, prior to the issuance of the one in suit, and an application for one had been made by Jackson, also before the issuance of the patent in suit, but abandoned. These constituted the prior art in April, 1909, when the patent, numbered 919,109, was issued to appellant. The aim of all was to avoid the necessity of closing and hauling in the seine by men standing on the bed of the water, and to permit it to be done from the surface of the water by a machine anchored on the bed of the water or supported and attached to the boat. None of the devices covered by any of the prior patents had been successful in practice, and for one and the same reason. In all of them, the free way, for the seine, in its passage, was limited to the diameter of the lead line, and while this was sufficient, in the absence of obstruction from foreign matter, it was found, in practice, that the stoppage of the machine by foreign matter, such as shells, seaweed, and folds of the net, was so frequent as to destroy the utility of the machine. The obstructions could only be removed by a descent to the bed of the water. In this state of the art, the appellant entered with the patented device involved in

this litigation. Its aim was to avoid the clogging of the machine, and it accomplished this by providing an unrestricted free way for the passage of the lead line on one side, by having but a single-sided contact for it. The prior art furnished only a restricted free way of the width of the diameter of the lead line, if not expressly, by necessary implication at least, since theretofore the lead line had been kept confined only by contact on both sides of it, and would have become inoperative if the points of contact had been substantially wider apart than the diameter of the line. The appellant's idea, therefore, measured the difference between practical success and failure. The previous devices were proved valueless in practical seining. The appellant's device in suit accomplished the purpose of closing and raising the seine without requiring the fishermen to stand on the bed of the water while it was being done, and, while not perfect, was susceptible of commercial use and was, in fact, so used. We have no difficulty in agreeing with the court below that the appellant's patent numbered 919,109 was a valid one.

It is contended, however, that it was not a pioneer patent and was a combination patent, and for that reason the patentee was not entitled to the benefit of the doctrine of mechanical equivalents, and the appellees, using different means to bring about the same results, with their device, were not chargeable with infringement. It must be conceded that appellant's device, covered by patent numbered 919,109, was not the first in the art of machines for closing seines, and not in that sense a pioneer patent. It was, however, the first practical and successful seining machine used in the shrimp industry, and the first to obviate the fatal defect of the prior art, which consisted in the clogging of the machine by obstructions, while the seine was being closed and raised. It was a pioneer to the extent that it contained the first and vital element of unrestricted free way, which successfully prevented clogging, and first made the machine operative. The appellant is entitled to the benefit of all that is included in the discovery of a machine giving unrestricted free way, and we do not think he should be deprived of this benefit because the successful device is due to a combination of old elements. It is true that the appellant's machine has no new single element. The result is attained by a combination or plurality of rollers, the purpose of which is to converge the lead lines and direct them upwards to the surface of the water. There is no new element in the rollers, and means of converging and directing the lead line upwards were then old in the art. The former combinations, however, were all handicapped by a restricted free way for the lead line, which in them passed between parallel rollers or their equivalents and were made operative only because of contact therewith on each side, with the inevitable result that all obstructions, while passing through this narrow space, stopped the process the machine was intended to accomplish and rendered it useless. The combination of the appellant, involved in this suit, added the feature, entirely new and unknown in the prior art, that it accomplished by a combination of sets of rollers the converging and upward directing result with a single or one-sided contact, which left an unrestricted free way for the passage of obstructions on the side on which there was no contact, and so permitted the passage of obstructions without

clogging the machine. The sets of rollers were so arranged by appellant that the lead line, in converging and ascending, pressed only against the side on which there was contact, and was held in place and operative by this one-sided pressure against the rollers, as points of contact. Is the inventor of such a decided improvement in the art entitled to the protection of the doctrine of mechanical equivalents, though the result is accomplished by a combination of elements, all of which are old, and the patent is a secondary rather than a primary one in the art?

In the case of National Hollow Brakebeam Co. v. Interchangeable Brakebeam Co., 106 Fed. 693, 45 C. C. A. 544, the Circuit Court of Appeals for the Eighth Circuit said:

"One who invents and secures a patent for a machine or combination, which first performs a useful function, is thereby protected against all machines and combinations which perform the same function by equivalent mechanical devices; but one who merely makes and secures a patent for a slight improvement on an old device or combination, which performs the same function after as before the improvement, is protected against those only who use the very device or improvement he describes or mere colorable evasions thereof. In other words, the term 'mechanical equivalent,' when applied to the interpretation of a pioneer patent, has a broad and generous signification, while its meaning is very narrow and limited when it conditions the construction of a patent for a slight and almost immaterial improvement. Adams Electric R. Co. v. Lindell R. Co., 77 Fed. 432, 440, 23 C. C. A. 223, 231, 40 U. S. App. 482, 498; Stirrat v. Manufacturing Co., 61 Fed. 980, 981, 10 C. C. A. 216, 217, 27 U. S. App. 13, 42; McCormick v. Talcott, 20 How. 402, 405, 15 L. Ed. 930; Railway Co. v. Sayles, 97 U. S. 554, 556, 24 L. Ed. 1053; Brill v. Car Co., 90 Fed. 666, 33 C. C. A. 313, 62 U. S. App. 276.

"But the great majority of patents falls between these two extremes. They are neither for pioneer inventions nor for improvements so slight as to be almost immaterial. While they do not evidence the first or the last step in the progress of the art to which they relate, they often mark signal advances and protect useful improvements. The doctrine of mechanical equivalents conditions the construction of all these patents, and in determining questions concerning them the breadth of the signification of the term is proportioned in each case to the character of the advance or invention evidenced by the patent under consideration, and is so interpreted by the courts as to protect the inventor against piracy and the public against unauthorized monopoly. Schroeder v. Brammer (C. C.) 98 Fed. 880; McSherry Mfg. Co. v. Dowagiac Mfg. Co., 41 C. C. A. 627, 101 Fed. 716, 721; Bundy Mfg. Co. v. Detroit Time-Register Co., 94 Fed. 524, 36 C. C. A. 375; Miller v. Manufacturing Co., 151 U. S. 186, 207, 14 Sup. Ct. 310, 38 L. Ed. 121; Penfield v. Chambers Bros. Co., 92 Fed. 639, 647, 34 C. C. A. 579, 587; McCormick Harvesting Machine Co. v. Aultman, Miller & Co., 69 Fed. 371, 16 C. C. A. 259, 37 U. S. App. 299; Muller v. Tool Co., 77 Fed. 621, 630, 23 C. C. A. 357, 366, 47 U. S. App. 189, 204.

"The doctrine of mechanical equivalents is governed by the same rules and has the same application when the infringement of a patent for a combination is in question as when the issue is over the infringement of a patent for any other invention. Schroeder v. Brammer (C. C) 98 Fed. 880; Imhaeuser v. Buerk, 101 U. S. 647, 653, 25 L. Ed. 945; 'Griswold v. Harker, 62 Fed. 389, 391, 10 C. C. A. 435, 437, 27 U. S. App. 122, 150; Thomson v. Bank, 53 Fed. 250, 253, 3 C. C. A. 518, 521, 10 U. S. App. 500, 509; Seymour v. Osborne, 11 Wall. 516, 542, 548, 20 L. Ed. 33; Gould v. Rees, 15 Wall. 187, 189, 21 L. Ed. 39; Fay v. Cordesman, 109 U. S. 408, 420, 3 Sup. Ct. 236, 27 L. Ed. 979; Water-Meter Co. v. Desper, 101 U. S. 332, 25 L. Ed. 1024; Gage v. Herring, 107 U. S. 640, 2 Sup. Ct. 819, 27 L. Ed. 601; Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; National Cash-Register Co. v. American Cash-Register Co., 53 Fed. 367, 373, 3 C. C. A. 559, 565, 3 U. S. App. 340, 357; Belding Mfg. Co. v. Challenge Corn-Planter Co., 152 U. S. 100, 14 Sup. Ct. 492, 38 L. Ed. 370.

"Mere changes of the form of a device or of some of the mechanical elements

of a combination secured by patent will not avoid infringement, where the principle or mode of operation is adopted, unless the form of the machine or of the elements changed is the distinguishing characteristic of the invention. Watch Co. v. Robbins, 64 Fed. 384, 396, 12 C. C. A. 174, 187, 22 U. S. App. 601, 634; New Departure Bell Co. v. Bevin Bros. Mfg. Co. (C. C.) 64 Fed. 859."

In the case of Westinghouse v. Boyden, 170 U. S. 537–561, 18 Sup. Ct. 707, 718 (42 L. Ed. 1136) the Supreme Court said:

"This word (pioneer), although used somewhat loosely, is commonly understood to denote a patent covering a function never before performed, a wholly novel device, or one of such novelty and importance as to mark a distinct step in the progress of the art, as distinguished from a mere improvement or perfection of what had gone before."

In the case of Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 415, 28 Sup. Ct. 748, 749 (52 L. Ed. 1122) the Supreme Court was called upon to review its prior decisions, which were thought to limit the doctrine of mechanical equivalents to pioneer or basic patents as distinguished from secondary or improvement patents, and expressed its conclusion as to what had been decided in these words:

"It is manifest, therefore, that it was not meant to decide that only pioneer patents are entitled to invoke the doctrine of equivalents, but that it was decided that the range of equivalents depends upon and varies with the degree of invention."

[2] We conclude that the application of the principle of equivalents is not confined to pioneer patents, but may be applied to secondary patents, as well, if they exhibit a degree of invention that entitles the patentee to its application; and that the inventor of a combination device is as much entitled to the doctrine of equivalents as any other inventor, provided his combination exhibits the requisite degree of invention.

In view of the fact that owing to the nondiscovery in the art of seine fishing of a device that would avoid the clogging of the machine, up to the time of the issuance of the patent in suit, the prior inventions had all been practically and commercially worthless, and that the appellant in his device, covered by the patent in suit, first discovered a practical method of avoiding the clogging of the machine, and by so doing made it first possible to close and haul in the seine from the surface, as distinguished from the bed, of the water, we think his patented device in question was a marked step in advance in the art, and showed a degree of invention that entitled him, as the patentee of it, to the benefit of the principle of mechanical equivalents as against imitators of his device. Appellant's machine "first performed a useful function," and is to be "thereby protected against all machines and combinations which perform the same function by equivalent mechanical devices."

We come then to consider the question of infringement. It is conceded by the appellant that the means used by the appellees to accomplish the closing and hauling in of the seine, without the clogging of the machine during the operation, are different from those covered by the patented device of the appellant. If there is infringement, it is

because the means so employed in the device used by the appellees are the equivalents of the means employed in the appellant's device, covered by the patent in suit. The remaining question is as to whether the two devices are equivalents.

In the case of Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935, the Supreme Court defined "equivalents" and provided a test for the courts in determining whether or not they existed, in these words:

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue; the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result.

"Nor is it safe to give much heed to the fact that the corresponding device in two machines organized to accomplish the same result is different in shape or form the one from the other, as it is necessary in every such investigation to look at the mode of operation or the way the device works, and at the result, as well as at the means by which the result is attained.

"Inquiries of this kind are often attended with difficulty; but if special attention is given to such portions of a given device as really does the work, so as not to give undue importance to other parts of the same which are only used as a convenient mode of constructing the entire device, the difficulty attending the investigation will be greatly diminished, if not entirely overcome. * * *

"Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape."

[3, 4] It is conceded that the horizontal and vertical sets of rollers in appellant's patented device perform the identical function that is performed by the spiral slot of the alleged infringing device. That function is the converging and directing upwards of the lead lines in such a way as to provide for a single-sided contact between the lead lines and the machine, with an unrestricted free way on the other side, for the passage of shells and other obstructions. In the case of each machine, this is accomplished by so arranging the contact of the lead line with the machine, as that pressure is exerted to hold the lead line against the points of contact, on one side, leaving the other side free for the passage of obstructions. In the prior art, there had been contact on both sides, and a passage for obstructions limited to the diameter of the lead line. In the patented device, this result is accomplished by means of horizontal rollers to converge the lead lines and vertical rollers to direct them upwards. In the alleged infringing device, the result is accomplished by means of a spiral slot, open on the side on which there is no contact, curving so that the lead line contacts with it, at points corresponding to the horizontal and vertical rollers, and with the same pressure to hold it in position and keep it operative. The two devices "do the same work in substantially the

same way, and accomplish substantially the same result," and are therefore mechanical equivalents, "even though they differ in name, form, or shape." They differ in the fact that the patented device is composed of separate parts, while the infringing device is in one piece. The fact that the infringing device closes in the open space between the vertical and horizontal rollers in the patented device, so as to make one piece instead of more, changes only the shape and form; the rollers in the patented device could be similarly enclosed "without change of function or method of performance." Uniting two elements into one does not avoid infringement. Walker on Patents (4th Ed.) page 308; Lambert v. Lidgerwood, 154 Fed. 372, 83 C. C. A. 350–354.

[5] Nor does the omission of rollers from the alleged infringing device avoid infringement. The sliding contact of the latter is the equivalent of the rolling contact of the former. A fixed sliding guide has been held the equivalent of a rolling guide. National Tube Co. v. Mark, 216 Fed. 507–514, 133 C. C. A. 13. It is true that the infringing device is in one respect an improvement over the patented device. The difficulty with the patented device is that, when the lines are slackened, the seine becomes disengaged from the machine, and the machine inoperative, with the necessity of the fishermen descending to the bed of the water. This is overcome by keeping the lines taut while the seine is being closed and hauled in. The slot of the infringing device operates more effectually to keep the lines engaged with the machine, during the process of closing and hauling in the seine, adding a feature of value to the art, as represented by the patented device of the appellant.

[6] The addition of an improving feature does not excuse the appropriation of the appellant's invention, covered by the patent, since we have construed the appellant's idea to be more than a mere improvement in form, and a distinct and valuable advance in the art. Walker on Patents (4th Ed.) p. 309; Comptograph Co. v. Mechanical Accountant Co., 145 Fed. 331, 338, 76 C. C. A. 205; Stebler v. Riverside Heights Orange Growers Ass'n, 205 Fed. 735, 739, 124 C. C. A. 29.

Our conclusion is that the appellant's patent, numbered 919,109, is valid, and is entitled to the protection of the principle of mechanical equivalents, because of the degree of invention exhibited by it; that the device used by the appellees is, in respect to the means adopted for providing an unrestricted free way for the passage of obstructions, the mechanical equivalent of the patented device of the appellant and an infringement thereof.

The decree dismissing the bill of complaint is therefore reversed, and the cause remanded for further proceeding in conformity with this opinion.

PARDEE, Circuit Judge, dissents.