**Norman BARTLETT and Marjorie Bartlett, Plaintiffs,**

v.

**Lavoy WINTON, Defendant.**

**Civ. No. 449.**

United States District Court
S. D. Florida,
Ocala Division.

Oct. 27, 1964.

---

Conrad Christel, of Christel & Bean, Buffalo, N. Y., George H. Baldwin, of Baldwin & Martin, Jacksonville, Fla., for plaintiffs, Norman Bartlett and Marjorie Bartlett.

Roe H. Wilkins, of Maguire, Voorhis & Wells, Orlando, Fla., for defendant, Lavoy Winton.

SIMPSON, District Judge.

1. This is an action for patent infringement brought by Plaintiffs for infringement of Claims 1, 2, 4 through 9, and 11 of United States Patent No. 2,895,735, which was duly and legally issued on July 21, 1959, to Plaintiff Norman Bartlett, the inventor, and Marjorie Bartlett, as assignee of a one-half interest therein, for an invention entitled "Amusement Ride", against Defendant, Lavoy Winton, based on his manufacture of an amusement ride at Leesburg, Florida, and his commercial operation thereof for profit at various places, including Leesburg, Florida; Summerville, Georgia; and McMinnville, Tennessee; and in other Southern states, in claimed violation of the exclusive rights secured to Plaintiffs by the patent.

2. Plaintiffs Norman Bartlett and Marjorie Bartlett are residents of North Miami Beach, Florida, and Defendant Lavoy Winton is a resident of Mount Dora, Florida, in which state he has committed acts of infringement by making and using, for profit an infringing amusement ride.

3. Plaintiff Norman Bartlett is a professional inventor and creator of amusement rides, having pursued that profession for the last thirty-five years during which he has designed and invented fifteen amusement rides that have gone into actual commercial use. United States patents were granted on eleven of these fifteen rides. Plaintiff Norman Bartlett is recognized as an inventor of amusement rides and has, on four occasions, been the recipient of the Humphrey Award, given each year by a committee of the National Association of Amusement Parks for the best ride of the year. The amusement ride forming the subject of the patent in suit was manufactured by Plaintiff's licensees and is sold under the name "Flying Coaster". It was awarded

the Humphrey Award in the year 1960. Approximately fifty "Flying Coaster" rides had been sold and were in commercial use at the time of the trial of this action, these rides having a gross sales value of approximately $1,500,000. (Tr. pp. 78–82)

4. Each of the rides, including the ride as shown in the patent in suit, the Flying Coaster ride as manufactured by Plaintiffs' licensee, and the accused Winton Fireball ride, may be described as follows. Each includes a central member which is rotated on a support by a motor. In each, several arms are pivotally connected to the central member so as to be able to swing up and down. The arms extend radially outwardly from the central member and rotate therewith. Each arm carries a passenger car at its outer end and each car is provided with an underlying wheel on which it may ride around a circular track. The track is level for most of its length but includes an upwardly inclined ramp section which terminates abruptly at its crest. Each car in turn rides up the ramp and, at the upper end of the ramp, sails off into space.

In order to prevent the cars from descending abruptly onto the level track upon leaving the ramp, each arm is connected through hydraulic means, including a cylinder and piston, to a part of the central member. The hydraulic means for each arm yields relatively freely in the direction to permit the arm to raise while the car ascends the ramp, but it yields only slowly in the other direction to restrict the rate of descent. The hydraulic means performs a desired function only after the car has left the ramp and before it lands again on the track.

In the Plaintiffs' Flying Coaster ride, the hydraulic liquid passes into the lower end of the cylinder from the upper end through the piston itself. A check valve is arranged in the piston to permit the fluid to pass relatively unrestrictedly while the car rides up the ramp. A small orifice is also provided through the piston bypassing the check valve to permit the liquid to pass in the opposite direction restrictedly during descent of the car. The check valve is closed during descent.

In the Defendant's Fireball ride, the hydraulic liquid passes out of the upper end of the cylinder into a liquid tank and from the tank into the lower end of the cylinder while the car is riding up the ramp. The connection from the top of the cylinder into the tank is unrestricted at all times. A check valve is arranged in the connection between the lower end of the cylinder and the tank which permits the liquid to pass relatively unrestrictedly into the lower end of the cylinder from the tank while the car rides up the ramp. A small orifice is provided bypassing the check valve to permit the liquid to pass in the opposite direction restrictedly from the lower end of the cylinder into the tank during descent of the car. The check valve is closed during descent.

In Defendant's Fireball ride, in order to speed the flow of liquid into the lower end of the cylinder while the car is riding up the ramp with the check valve open, it proved necessary, because Winton had used check valves or hoses in the connections to the lower end of the cylinder which were too small, to introduce compressed air into the liquid tank. Such provision would be unnecessary in the Plaintiffs' ride because the pressure in the upper end of the cylinder would necessarily be sufficient to force the liquid through the check valve into the lower end of the cylinder while the car is riding up the ramp.

The only difference in the operation of the rides of the respective parties is a tendency for the cars in the Defendant's ride to drop for a short distance after leaving the ramp before the hydraulic means takes hold to retard the descent. This tendency is reduced as the air pressure, in the tank, is increased since this reduces the size of the vacuum bubble which may form under the piston. In the Plaintiffs' ride, the retarding action of the hydraulic means takes effect more rapidly and the car has a tendency to soar from the end of the ramp.

5. The invention of the patent in suit is an amusement ride of the roundabout type which consists of a combination of the following elements, as recited in Claim 2 of the patent which is representative of the claims in suit:

(a) a central support and means rotatable relative thereto in a generally horizontal place,

(b) a plurality of arms radiating from said rotatable means and connected thereto by generally horizontal pivots for up and down movement of the arms relative to the rotatable means,

(c) passenger-carrying means at the outer ends of said arms,

(d) power means for rotating said rotatable means whereby the passenger-carrying means traverse a circular path,

(e) a ramp in said path having an inclined rise portion terminating abruptly at the crest thereof whereby the passenger-carrying means ascend the ramp and are projected therefrom,

(f) hydraulic means having relatively movable parts connected to said arms and said rotatable means and adapted for relative movement in opposite directions in response to up and down movements of said arms, said hydraulic means being single acting whereby said parts are movable unrestrictedly during upward movements of said arms but are restrained by restricted hydraulic flow upon downward movements of said arms and downward movement of said passenger-carrying means occurs at a speed controlled by said hydraulic means.

6. At the trial Defendant's expert witness, Mr. Alexander T. Sperry, referred to six prior art patents on the question of validity. (Tr. pp. 368–380 and pp. 388–398) Three of these patents, Fisher 1,583,287, Norvell 2,638,345 and British patent 405,422 were considered by the patent Examiner in passing upon the Bartlett application. The three additional patents discussed by Defendant's expert witness are Lester patent 1,713,703, Mitchell patent 2,869,871 and Bradley patent 2,922,648.

7. Only two of the prior art patents show ramps and neither of these ramps terminates abruptly. In the Fisher patent a series of cars ride around a gently undulating track and remain in continuous contact with the track. In the Norvell patent a hobby horse is propelled around a circular path by the rider himself by foot pedal operation. Neither of these patents provides any means for controlling downward movement of the vehicle. The vehicle merely descends the declining side of the ramp or falls by gravity. Neither of these patents suggests any hydraulic means whatever.

8. The remaining four prior art patents do not include ramps of any kind and relate only to the use of hydraulic devices in amusement rides. In the British patent airplanes on radiating arms are air-borne by free flight and the hydraulic devices merely restrict extreme upward and downward movements of the airplanes, these movements being primarily under the usual control of aelerons and elevators. In the Lester patent the cars are raised by a chain drive mechanism and fall freely under gravity until they are cushioned by an air cylinder as they approach the ground. In Mitchell hydraulic pressure is provided to raise passenger cars and when the passenger releases the raising valve the car lowers by expelling fluid from the car raising cylinder. In the Bradley patent the cars do not move into ground contact at any time but remain suspended at the outer ends of supporting arms or booms. The elevation of the cars in Bradley is controlled by a hydraulic motor, the passenger operating a lever to move a valve in one direction for upward movement and in the other direction for downward movement.

9. The element in an amusement ride of a ramp having an inclined rise portion terminating abruptly at the crest thereof is not found in the prior art (Tr. pp. 116, 117). No prior art patent shows, in an amusement ride, the combination of a ramp and hydraulic means (Tr. pp. 393, 394, 450).

10. The patents relied upon by Defendant in addition to those cited by the Patent Office, namely the aforesaid patents to Lester, Mitchell and Bradley, and apparently relied upon by Defendant as showing the use of hydraulic devices in amusement rides, are no more pertinent on this point than the aforesaid British patent 405,422 which was cited by the Patent Office and considered by the Examiners.

11. The Plaintiffs' patent is the first teaching in the amusement ride art of apparatus wherein a passenger car is elevated by moving up a ramp, then moves off of the top of the ramp and falls back to the ground under the force of gravity restrained and controlled by hydraulic means. The elements of Claims 1, 2, 4, 5, 6, 7, 8, 9 and 11 of the patent in suit constitute a true patentable combination, and not a mere aggregation of old elements. All of the elements cooperate with each other to perform new and useful results in an improved manner and were combined through the exercise of invention. The new combination of old elements brought together for the first time by the inventor, Bartlett, would not have been and was not obvious to one having ordinary skill in the art at the time the invention was made.

12. While the defense of invalidity is still formally present in the case, Defendant's post-trial briefs make no assertion of invalidity or lack of invention, nor do these briefs explain any alleged invalidity on the prior art patents of record.

13. The only testimony on behalf of Defendant on the question of infringement relates to element (f) of Claim 2 as set forth in Finding No. 5 above, such testimony comprising an allegation that in the accused Fireball ride the hydraulic means does not move unrestrictedly during upward movements of the arms and that the hydraulic means is therefore not single-acting. The hydraulic means of the accused ride is single-acting within the meaning of the claims in suit since it performs its working hydraulic resistance entirely on the down strokes of the arms and any resistance present on the up strokes is merely such as is normally present in any single-acting hydraulic device, and performs no function in the operation of the accused ride. The Defendant testified by deposition (Tr. p. 61), referring to his hydraulic devices, "the restricters open up on the in-go of the ramp; * * *. On the down-come of the ramp, the orifice closes."

14. A single-acting hydraulic device such as a single-acting shock absorber will inherently and unavoidably have some restriction to movement in the "free" direction due to fluid friction, the size of the valve passages, the viscosity of the liquid, etc. Claims 8 and 9 of the patent in suit, in referring to the hydraulic means, specify that the parts are movable *relatively* unrestrictedly during upward movements of the arms, and Claim 11 specifies dash-pot means "being single-acting and thus permitting *relatively* free upward movements". (Emphasis supplied)

15. Defendant and his assistant, F. G. Stephens, examined one of Plaintiffs' Flying Coaster rides at Nashville, Tennessee, in September, 1959, prior to the commencement of the construction of the accused Fireball ride and at such examination Winton testified that he knew his assistant Stephens took measurements of the patented Bartlett Flying Coaster ride (Tr. pp. 72–75).

The Flying Coaster ride so examined bore a notice of Patent No. 2,895,735 prominently displayed thereon.

16. Defendant commenced the construction of the accused Fireball ride at Leesburg, Florida, shortly after he and his assistant F. G. Stephens inspected Plaintiffs' Flying Coaster ride at Nash-

ville, Tennessee in September, 1959 (Tr. pp. 246, 247).

17. The Defendant's Fireball ride as initially constructed at Leesburg, Florida, directly copied the patented Bartlett Flying Coaster ride (Tr. pp. 49–61) and did not include the air pressure upon which Defendant now relies to avoid infringement. This original prototype proved to be inoperative (Tr. pp. 253, 254) and the air pressure over the hydraulic reservoir was introduced by Winton solely for the purpose of making this ride work and not for performing any function in addition to or improvement of the patented Flying Coaster ride (Tr. pp. 255–258).

18. The testimony or Defendant's expert Dr. Scholtes, of the University of Florida, is to the effect that the air pressure made the ride work by speeding the hydraulic fluid into the cylinders (Tr. p. 365). The inventor of the patent in suit, Norman Bartlett, testified that he used air pressure to expedite the flow of oil in experimental Flying Coaster rides (Tr. p. 110).

19. Testimony of Defendant's expert Scholtes clearly establishes that any restriction to the desired free upward movements of the arms introduced by Defendant's use of air pressure over the hydraulic liquid would be relatively insignificant and would be only equivalent to adding a twelve-pound baby as a passenger in the car (Tr. p. 436).

20. Even if the introduction of air pressure in the Winton Fireball ride did perform a useful purpose in addition to the combination of the claims in suit, such additional feature would not avoid infringement, since the Fireball ride responds literally to the definitions of the claims in suit and the corresponding elements in the Fireball ride perform the identical functions of the elements of the claims of the patented ride, and anything additional in the Fireball ride is surplusage in determining infringement.

21. The Winton Fireball ride embodies each and every element of the combinations defined in Claims 1, 2, 4, 5, 6, 7, 8, 9 and 11 of the patent in suit and accordingly infringes such patent. Defendant has failed to present evidence which would sustain a finding of non-infringement of any of these claims.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this action.

2. Plaintiffs are the owners of the entire right, title and interest in and to the Bartlett patent in suit, No. 8,895,735, and have been such owners continuously since the date of the grant, July 21, 1959.

3. The patent is presumed to be valid and the burden of establishing invalidity rests upon Defendant (35 U.S.C. § 282), and any reasonable doubt will be resolved against him. 35 U.S.C. § 282; Cameron Iron Works v. Stekoll, C.A. 5, 1959, 242 F.2d 17, 20; Adams v. Columbus Manufacturing Co., D.C.N.D.Ga. 1960, 180 F.Supp. 921, 930; Johns-Manville Corp. v. Italit, Inc., D.C., 209 F. Supp. 798.

4. The statutory presumption of validity is not overcome where the most pertinent patents relied upon by Defendant to show lack of invention are no more pertinent that those considered by the Patent Office during the prosecution of the application on which the patent in suit issued. Otto v. Koppers Co., C.A. 4, 1957; 246 F.2d 789, 801, 900; Southern States Equipment Corporation v. USCO Power Equipment Corp., C.A. 5, 1953, 209 F.2d 111, 118; Johns-Manville Corp. v. Italit, Inc., D.C., 209 F.Supp. 798.

5. The commercial success of "Flying Coaster" amusement rides made and sold by Plaintiffs' licensee under the Bartlett patent in suit and its acceptance by the trade further strengthen the statutory presumption of validity of the patent.

6. The Defendant has not sustained the burden of proof necessary to overturn the presumption of validity attaching to the patent from its grant or the administrative determination of pat-

entability made by the Patent Office in granting the patent.

7. The combination of the Bartlett patent is a true and patentable combination.

8. A new combination of old elements producing new, useful, and unexpected results is patentable under the Patent Laws of the United States.

9. A new combination of old or previously known elements which are brought together for the first time in a manner which would not be obvious to a person having ordinary skill in the art and which cooperate to produce a new and useful improvement over all previously known combinations, is patentable.

10. The invention of the Bartlett patent in suit is patentable since it is not anticipated by the prior art and the subject matter as a whole would not have been obvious to a person having ordinary skill in the art at the time the invention was made.

11. The patent in suit, No. 2,895,735 as to Claims 1, 2, 4, 5, 6, 7, 8, 9 and 11, the only claims in suit, is good and valid in law.

12. An improver cannot appropriate the basic patent of another. The improver without a license is an infringer. Temco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298; Cochrane v. Deener, 94 U.S. 780, 787, 24 L.Ed. 139, 141; Cantrell v. Wallick, 117 U.S. 689, 694, 6 S.Ct. 970, 29 L.Ed. 1017, 1018; Yancey v. Enright, 5 Cir., 230 F. 641, 647, 145 C.C.A. 51; Reed v. Hughes Tool Co., C.C.A. 5, 261 F. 192, 194.

13. Alterations in the form of mechanically equivalent elements do not avoid infringement where, as here, the accused device exhibits the essential elements of the patent claims. Jeoffroy Mfg., Inc. v. Graham, 206 F.2d 772 (5 Cir. 1953).

14. Claims 1, 2, 4, 5, 6, 7, 8, 9 and 11 of the patent in suit have been infringed by the Defendant in the manufacture and commercial use of his "Fireball" ride.

15. Plaintiffs are entitled to an injunction restraining Defendant from infringement of Claims 1, 2, 4, 5, 6, 7, 8, 9 and 11 of the Bartlett patent.

16. Plaintiffs and Plaintiffs' licensee have complied with the provisions of 35 U.S.C. § 287 relating to affixation of notice to rides manufactured under the patent in suit.

17. In accordance with the provisions of Title 35, United States Code, Section 284, Plaintiffs are entitled to an award of damages adequate to compensate for the infringement, in no event less than a reasonable royalty for the use made of the invention by the Defendant, together with interest and costs as fixed by the Court.

18. Plaintiffs' further assertion that the infringement was deliberate is sustained by Finding of Fact No. 15 that Defendant and his assistant Stephens examined one of the Plaintiffs' rides in Nashville in 1959 and thereafter constructed the infringing ride. The particular ride so examined bore a notice of the patent in suit displayed in a prominent position. The Plaintiffs therefore assert, in addition to compensatory damages, the right to recover treble damages and attorney's fees. Since the determination of the amount of appropriate damages and of the interest to be allowed thereon will require further testimony, decision of these additional claims for damages, interest and attorney's fees is reserved. The Court will assign a date agreeable to counsel, during the week of December 14, 1964, for taking testimony and submission of the issues of damages, interest and attorney's fees. Counsel are requested to notify the Court of an agreeable time for such hearing.

19. Plaintiffs shall recover their taxable costs as fixed by the Court.

20. A permanent injunction should issue in Plaintiffs' favor against the Defendant, enjoining and restraining said Defendant, his agents, servants, associates and employees, and each of them.

**638**

from making, using and/or selling rides embodying the invention claimed in Claims 1, 2, 4, 5, 6, 7, 8, 9 and 11 of Letters Patent No. 2,895,735 and from in any way infringing upon any of said Claims 1, 2, 4, 5, 6, 7, 8, 9 and 11 of said Letters Patent or upon the rights of Plaintiffs under said claims. Such injunction should issue now rather than after determination of damages, attorney's fees and costs. Plaintiffs' counsel is directed to present an injunction decree for entry by the Court.