PETERS *v.* ACTIVE MANUF'G CO.[1]

*(Circuit Court, S. D. Ohio, W. D.* August 22, 1884.)

1. PATENTS—PETERS' CARRIAGE DASHES—SHEATHS FOR APPLYING MOULDINGS.
   Patent No. 178,463, granted George M. Peters for improvements in sheaths or holders for applying mouldings to the tops of carriage dash-boards, *held* to be anticipated by a machine used for putting mouldings on combs by means of a sheath constructed and operated similarly. That the machine was comparatively small, and used only for applying mouldings to combs, is immaterial.

2. SAME—INFRINGEMENT—ANTICIPATION.
   That which would infringe, if later, anticipates, if earlier.

In Equity.

*J. W. Firestone* and *Wm. Hubbell Fisher,* for complainant.

*Stem & Peck,* for respondent.

SAGE, J. This suit is brought upon letters patent No. 178,463, issued to complainant, June 6, 1876, for an improvement in tools for attaching sheet-metal mouldings. The specifications set forth the invention of certain new and useful improvements in sheaths or holders for applying mouldings to the tops of carriage dash-boards, and that it comprises a peculiarly constructed sheath or holder, wherewith the moulding may be applied expeditiously, and without bending or buckling, or injuring or marring, either the moulding or dash-board. The sheath may be made of one or more pieces of metal, or it may be made of wood lined with a metallic bushing. When made of two pieces or parts, which is the form preferred by the patentee, the pieces are connected by bolts and washers, and grooved so as to inclose the moulding; a key or other suitable stop being fitted within the sheath to prevent the moulding slipping through the groove. The sheath has undercut notches to receive the key, which is detachable, and serves as a stop or abutment for the rear end of the moulding to rest against. Notches may be cut at such distances from the front end of the sheath as may be required for the various lengths of mouldings to be used, or the notches and key may be dispensed with, and a screw stop, described in the specifications, substituted. The moulding consists of a sheet-metal tube, having a longitudinal slot or parting, and its forward end is made flaring or trumpet-mouthed, so as not to tear the leather coverings of the dash while the moulding is being applied. The dash is held perfectly rigid in clamps, and the sheath, containing the moulding and fitting it closely so as to prevent buckling, is drawn, by means of a cord or strap, attached to a hook or link, pivoted to the front end and guttered to avoid contact with the edge of the dash, along the upper edge of the dash, which projects above the clamps. As the sheath advances, the flaring mouth serves to conduct the leather margins of the dash into the longitudinal slot of the moulding, and, the sheath fitting the moulding closely, prevents any radial

[1] Reported by J. C. Harper, Esq., of the Cincinnati bar.

distention and causes it to be fitted uniformly and securely to the dash. After the moulding has been drawn to its place on the dash, the sheath may be retracted without withdrawing the moulding. The flaring or trumpet end of the moulding is then filed off or disposed of in any other suitable manner. While the sheath is being drawn along the top of the dash, the moulding is impelled forward by the key or stop, and consequently no strain is brought to bear upon the flaring end of the moulding. "It is evident," says the patentee in the last sentence of the specifications, "that this form of sheath may be advantageously employed for attaching sheet-metal mouldings or tubes to various articles, and I reserve the right to use it for any and every purpose that it is capable of."

The first claim is "a sheath for applying metallic mouldings, said sheath being furnished with a stop for advancing the moulding, all substantially for the purpose specified." The second claim is for the sheath described in the specification, furnished with recesses and a key, or their equivalent stops, as and for the purpose explained. The third claim is for a sheath composed of two grooved bars, held to their places by bolts or screws and washers or fillings, whereby it may be adjusted to mouldings of different diameters. The fourth claim is for the combination of the grooved bars forming the sheath, and guttered hook or shackle described in the specification, for the object stated. The third and fourth claims need not be considered. None of the sheaths used by respondents contained washers, or any substitutes or equivalents therefor, whereby they were rendered capable of adjustment to mouldings of different diameters, and it was admitted on the hearing that there was no infringement of the fourth claim.

The respondent's evidence establishes that as early as September, 1867, Joseph P. Noyes, a manufacturer of combs at Binghampton, New York, used a machine for putting mouldings on combs, in which the moulding was held in a sheath fitting it closely, and having an extension enough smaller to fit the comb. In this extension there was a sliding follower fitted to abut against the end of the comb. At the extreme opposite end of the larger part of the sheath there was a slot across the sheath, containing a key or stop to prevent the sliding of the moulding. The follower was attached to a slide and lever, so that when a moulding was laid in the larger part of the sheath and the comb in the smaller part, the comb, being prevented from bending by the walls of the sheath, could be forced into the moulding by the action of the slide and lever upon the follower, the moulding being prevented from bending by the walls of the part of the sheath within which it was placed. This machine was in use more than three years before the date of the complainant's invention. That this was a comparatively small machine, and used only for applying mouldings to combs, is not material. *Planing Mach. Co.* v. *Keith,* 101 U. S. 490. Nor is it material that the groove or gutter was so open in cross section that the moulding could be dropped into it. Figure 6, of the drawings

accompanying the letters patent issued to complainant, shows a sheath of like shape, and is referred to in the specifications as a modified form of the sheath patented, and the claim is so broad as to cover any sheath, of any material, shape, or size, for applying mouldings to any article.

There is nothing more in the sheath patented to the complainant than an adaptation of the sheath used at Binghampton to the application of mouldings to carriage dash-boards; an adaptation which would have occurred to a skilled mechanic without the exercise of the inventive faculty. Had the complainant's invention been first in time and patented, the Binghamton sheath would have been an infringement; and, conversely, had the Binghamton sheath been patented, the complainant's would have been an infringement. That which infringes, if later, would anticipate, if earlier. *Day* v. *Bankers' & Brokers' Tel. Co.* 9 Blatchf. 345; *Buzzell* v. *Fifield*, 7 FED. REP. 465.

The bill is dismissed at complainant's costs.